Good morning, your honors. May it please the court. My name is Paul Gleason. I am the attorney for the appellant, David Calderon. This is an employment discrimination and retaliation case. We believe the court erred in granting summary judgment. And I'd like to start first with discussing the retaliation claim. From the transcript and the court's oral ruling, granting summary judgment, as to retaliation, the court stated that the fundamental flaw in plaintiff's claim is that the decision to terminate him was made before plaintiff engaged in any protected activity. Well, that statement is clearly erroneous. The plaintiff here was informed that his position was going to be eliminated in May of 2009. And he was told that that would be effective December 31st of that same year, 2009. On December 1st, 2009, the plaintiff made his formal discrimination complaint to the company. After making that formal discrimination complaint on December 1st, 2009, he applied for two different terminal operator positions. Wait a second. I'm having a hard time following the chronology here. If Judge Reel said from the bench that the decision had been made to terminate him, was he referring to the conversation in May of 2009 when Mr. Calderon was told that his job was going to be eliminated? Or is there some ambiguity in what the court was referring to? I mean, actually, that's a good point. He wasn't even told he was going to be terminated in May of 2009. He was only told that his position would be eliminated on the last day of the year, and that he had until that time to try to find another position within the company. So, theoretically, a decision... Why doesn't that essentially put him on notice that he might not have a job at the end of the year if he can't find a different position from the one that he had in May? It no doubt did. It put him on notice that he might not have a job, but it didn't mean that he was without a job until it turned out that he couldn't get another job. And the retaliation issues have to do with trying to get another job. Exactly. In other words, they don't have to do with the decision made in May to eliminate his position. That's a separate set of issues. Exactly. So he applied for two different terminal operator positions after he made his complaint of discrimination in December of 2009. So the court's ruling that the protected activity occurred after the adverse employment action is simply erroneous. I mean, it's correct to the degree that if you were trying to challenge the decision to eliminate his position... Exactly. We have several different adverse employment actions. Through the retaliation, that couldn't fly. Right. That's all. Just on the retaliation point, I think we've all read the materials. We've read the record on the timeline. I think probably the best point that I think you have, and I'd be interested to know how material you think it is, is that Yates indicated that Shahan, however you say it, didn't mention Calderon's internal complaints to him. He was unaware of it. She said that she did tell him. Is that sufficiently material that that would be a basis alone for sending that aspect of the summary judgment back to the trial court? Well, certainly one of the elements is that the decision makers had knowledge of the protected activity. Right. Did the district court also say that that was missing, too? Excuse me. Yes. Well, at least the... Actually, the district court didn't even address that particular issue. The trial is arguing that that's missing, and your position as to that is it's not. That's a contested issue of fact. Which one was that? I'm sorry, I didn't hear. The question of whether the person making the decision knew. Exactly. Shahan says that she told Yates. All right. So if you fill that in, and you fill in the timing, but you still have a set of questions. We do this at Genova, so even if Judge Reel's reasons were wrong, and even if the government's wrong about whether there's a sufficient causation or nexus, you still have the question of whether with regard to the jobs that he didn't get from the period of December 1st forward, you've made a prima facie case, and they have not come up with sufficient non-protectional reasons. Right. Exactly. And the key person to focus on at this point is this individual named Claudio. He was one of the applicants for the terminal operator position. He actually didn't even work for Shell. He worked for another company called Criterion Catalyst. They say it's connected. They say it's connected, but it wasn't the same employer as Mr. Calderon. In other words, he was changing employers when he got hired into this terminal operator position. I thought he had been a terminal operator at the other place of employment. He had been, but it's a different type of terminal. And they got summary judgment based upon declarations of Rodriguez and Yates that said that because he worked as a terminal operator, he knew how to do the job. And unlike Calderon, he would not require any new training. Well, when we deposed Mr. Rodriguez, he admitted that it was a different terminal, that Claudio did not know how to do the job, and he actually said that he would require the exact same training as a new hire, which is putting him in the identical position as Mr. Calderon. And so the declarations, the basis of the summary judgment were proved false, and the district court completely ignored that. And if you take away this false allegation that Mr. Claudio could step in and do the job, because that's what they said, then you have no differentiation between hiring Mr. Claudio or Mr. Calderon. And they also say that your client was quite inflexible about where he would work, and that was a lot of the reason you didn't get another job. Right. Well, I mean, there were, I mean, one of the people that transferred from San Diego and got the Signal Hill job was Mr. Wynn, who's a relative of Mr. Herman. Mr. Wynn didn't want to go to Van Nuys. They accommodated him and put him in Signal Hill. Sure, Mr. Calderon admits he didn't want to move to Seattle. He didn't want to move to Northern California. I didn't understand that for the life of me. But, yeah, but he applied for, there were two positions open, right, in his own backyard in Southern California. And they say they hired Claudio because Claudio could step in and do the job, and that is factually not true. So, I think the retaliation claim clearly. By the way, you also are not required to use up your 15 minutes. Okay. Go ahead. I'll move forward. Yeah, so we think there was an error in dismissing the retaliation claim. Just a couple other points on that. Karen Shahan was not only, she was a subject of the complaint of discrimination,  Calderon sat through the first day of interviews. Jared Sears, who investigated the complaint, he sat through the first day of interviews. So, if you combine that with Shahan. Passed through them, meaning watched them or participated. Participated. Asked questions and even sat around at the end of the day and talked about how well people performed. So, when you combine Shahan telling Yates. I thought she told me she shouldn't participate. What was she doing there? After she told me she couldn't. Well, she didn't participate. Calderon was on the second day. Oh, I see. So, she didn't participate when Calderon was there. But they still had other candidates, applicants interviewing. And she could influence the process that way. Also, she admits that she told Yates the identity, Calderon, that he initiated this investigation. Sears says that's against company policy. In fact, when Sears investigated this complaint. The people that he interviewed, he would not tell them who made the complaint. Because he says they don't tell the name so that there won't be retaliation. So, Shahan not only violates this. She violates it to Yates who is the decision maker for these terminal operator positions. How can you conduct an investigation of this nature without the subject figuring out who filed the complaint? Or how can you do a thorough investigation without anybody knowing? And we think it was a sham investigation anyways. But that's what Sears. I mean, I understand what the employer is trying to do. But I just, as a matter of. I don't think it happens that way normally. I don't see how it can be done. I don't either. And we think the investigation. But I'm not sure that creates a triable issue of fact. I mean, that may be evidence of good faith on the part of the employer in trying to conduct an objective internal investigation. But as a practical matter, I don't think it works. Well, my point was that Shahan shouldn't have disclosed this to Yates. Right. Even though it's a panel of three, they all admitted that Yates was the guy who was really going to make the call. Okay. Just a couple other points. You know, there's also a serious issue about the company following its posting procedure. They call it this open requisition system. And whenever Mr. Calderon, when he wanted these terminal operator positions in Southern California, they claim you have to follow this position where these are broadcast all over the world. Well, first of all, when Mr. Calderon applied for the trader in development position that was located in San Diego, the declaration of Terry Ullman says he wasn't selected because he was not a local candidate. I thought he wasn't selected because he just didn't have any qualifications. No. As well. The primary reason she said, this was an entry-level position. He wasn't selected because he was not a local candidate. She also said that he wasn't selected because he didn't have the experience. But if you look at the requisition that's attached to her declaration, it's an entry-level job. There's no experience requirement. Mr. Calderon had a BA. He had an MBA. He had a lot of 20 years with Shell. He had enough experience to apply for this position. They didn't consider him primarily because he was not a local candidate. But when he's interviewing for terminal operator positions in this area, Signal Hill and Van Nuys, against San Diego applicants, they say they hire them over him. So he gets no preference for being a local candidate. So they have shifting reasons for why they were not considering him for positions. There's another position called facility health and service advisor. He applied for that. They hired a person based in Florida, a white female, over him. Again, no preference for being a local candidate when he's the local candidate. This is an important position because before his job was eliminated, according to Shell declarations, he had applied for a comparable job as the facility health and service advisor, and he was deemed the most qualified candidate and awarded the job. But it was up in Northern California, and he decided not to take it. So we're talking about a job that he was admittedly qualified for, but they take a Florida applicant over him. Mr. Gleason, I know you've emphasized the retaliation claim, but are you no longer challenging the company's decision to eliminate his position since, as I understand it, there were other Hispanics that were also laid off as well? Well, I think, I mean, we are challenging that decision also. I mean, Mr. Herman, and, you know, they cite some cases. I'll try to be brief here, like Martin v. Lockheed. That's a great example. Martin v. Lockheed, there was a system for you're going to have a reduction in force. You go through a ranking process. People get credit for seniority. There's nothing in Title VII that requires or in Fair Employment and Housing Act that requires that you have that process. This is no process at all. This is simply Mr. Herman deciding that a job that Mr. Lloyd, who created it, thought was essential, that Lisa Barfield, the current supervisor, thought was essential. Mr. Herman says, I considered it for two weeks and decided it was not essential. There's not a single piece of paper. There's not a single document. There's no cost analysis. There's nothing that Mr. Herman did from outside appearances to show that this was no longer an essential job. That doesn't make the Title VII case. Right, but if you look at the Suarez case, that's one of the cases where there was a decision. It was a pregnancy discrimination case, but the court in that case, it's a district court case, but they noted that when you have a meeting like this that has no documentation on it and you're relying on this meeting, a jury might believe that that didn't occur. And if a jury believed that that didn't actually occur the way you said it did, then you have an issue about what is the employer fabricating the reason now for the employment decision. I'd like to reserve two minutes for rebuttal. I'll give you a minute. Thanks. Good morning. My name is Kenneth Jones, and I represent Shell Pipeline Company, the appellee in this case. The court below properly granted summary judgment in this case, and the reason why the record supports this is the fact that Shell came forward with valid, non-discriminatory, non-retaliatory business reasons for elimination of the position that Mr. Calderon held. Let's go to the retaliation issue because that's where he began. It would be helpful to have that job. I will address the retaliation issue then. With respect to the retaliation issue, as to the elimination of the position itself, the PT, the terminal operator position itself, obviously given that the decision to eliminate the position occurred in March, actually before Mr. Calderon ever filed a protected complaint at the end of the year 2009, of course there's no nexus there. With respect to the whole issue of whether or not there was retaliation and respecting Mr. Calderon's pursuit of alternative positions within the company, the record does not support this as well. Well, that's the one I struggle with. I admit that there is no causal link in the termination of the discrimination complaint because of the earlier filing. But the failure to hire is the one that troubles me. And as I mentioned to Mr. Gleason, it seems to me that the difference between the statements of Mr. Yates and Ms. Shahan with respect to whether there had been a communication regarding Calderon's internal complaint does raise an issue that perhaps needs to be explored in some setting other than a summary judgment. Do you agree with that or am I missing something? I don't agree with that, Your Honor. The issue we have here is with respect to the actual testimony concerning this issue, what Ms. Shahan testified to was that she told Mr. Yates that it would be inappropriate for her to be part of the interview process.  She did not go into the subject matter of the investigation at all. So that just by itself doesn't really raise an interest. Well, what my review shows is that ER 125, Mr. Yates, indicated that Ms. Shahan didn't mention Calderon's internal complaint to him and that he was unaware of the complaint at the time of the interview. And he said in ER 126 that if Shahan had told him that she'd been named in a complaint by Calderon, he would have remembered it. On the other hand, Shahan said in her deposition that she told Yates prior to the Calderon interview that she was recusing herself because she'd been named in an investigation by Calderon, and that's at ER 325, 326. Those can't be squared, can they? I believe they can be squared if you go directly to Mr. Yates' testimony on this point. And I'm at ER 229 and 230 where the question was actually put to him. It was a different question asked of him than what is being framed by counsel. The question was, did Shahan ever tell you that Mr. Calderon had made a complaint of discrimination against the company? That was the question. The answer was, not to my knowledge. Okay. So you're saying that the lack of specificity in what was said in the earlier context is conclusive in this situation? Yes, if we read on further, it actually is more illuminating as you read further. The follow-up question, did Karen Shahan tell you that she was going to recuse herself from the interview because she was a party to Mr. Calderon's complaint of discrimination? I don't understand how that helps you. I mean, it may demonstrate that the two statements can be squared, but the direction that they're squared in is that, in fact, he did know that she was the subject of an investigation at the hest of Mr. Calderon at the time that he interviewed him and made the decision. So then you have to be saying that somehow it matters that he know exactly what the investigation and complaint was about. Why does that matter? I think it matters with respect to it being a protected complaint in this case. That is, retaliatory. I mean, he has to know what the complaint is about, and he has to know. In other words, if the complaint was, in fact, a protected complaint, that he has to know that not only that it was a complaint and that it was a reason why he had a conflict, but, moreover, that it was a protected complaint. I think it has to be some suggestion that, in fact, it was a protected complaint. The way that Ms. Shahan describes the situation does not bring any context to it. He could have been complaining about anything at all with Ms. Shahan, not necessarily a protected complaint under the FEHA. And further, with respect to the question of Mr. Yates concerning this particular issue, he says that he didn't really recall it because of the context in which the question was asked. He didn't recall the complaint because the question that was asked was, did she file a complaint with the commission? I know, but that goes to whether he was lying or not. It doesn't really matter in this context. Okay. Well, with respect to even that issue, moving on to the issue of whether or not, in fact, other individuals that were less qualified than Mr. Calderon actually received these positions as part of this retaliatory action. And the evidence, I think, is clear that, in fact, Mr. Calderon did not present a tribal issue regarding his being more qualified or equally qualified to these other individuals. Let's go with respect to the issue of the terminal operator positions, which he coveted so much. With respect to every terminal operator position that Mr. Calderon sought, in fact, everyone that was hired had previously worked as a terminal operator. Now, if we look at the, and I think that's a significant issue, whether or not there would be additional training required afterwards is besides the point. Why? Because there were some skills that were transferable as part of the training. In fact. And I don't know whether it is, but the record was that this guy from San Diego may have had some transferable skills, but he would have required a full year of training and that, as if he were a new employee, and that Calderon would have required the same amount of training. What difference does it make? Well, I would think that the person that has actually done the job before would come in with a leg up in terms of having experience in those particular areas and bringing certain expertise. Yes, because theoretically that means you do a better job from day one, but apparently he was going to do a better job from day one. I think what we're missing here is with respect to the training issue, there are different sites where these terminal operator positions are located. So if you're at a different site, you're going to have to be oriented to training at that particular site. So the folks that would have worked at, in this case, Mr. I'm sorry, Mr. I'm blanking on his name. Mr. Claudio. The guy from San Diego? Yes. Mr. Claudio had worked at another location for a shell-related company. He would have certain skills that could be transferable over, but he would still have to be trained at that new location. So if I hear what you're saying, what you're saying is he was more valuable to shell because he had already worked as a terminal operator even though shell was going to put him in the same program they would have put an entry-level person because that's the shell way of doing things. That's precisely it. We're not going to treat you as a lateral even though you probably are. That's precisely it. Though the skills, Mr. Claudio, were somewhat different, in fact Well, I guess the real question at this point is could a reasonable juror conclude otherwise? Could a reasonable juror conclude that Calderon and Claudio would essentially need the same training and wouldn't be productive from the outset and, therefore, there was no In fact, he was not more valuable even though he had had the title in a different place. I would submit that, in fact, the fact that there was that Mr. Claudio had done the job That's not the question I asked. Well, I don't think that I think under the circumstances here that this is not a matter that needs to go to the jury because of the fact that you can identify some specific experience that Mr. Claudio had over Mr. Calderon. Regardless of the additional training program, there was specific experience which was not refuted by the other side substantially. But the experience seems to be that he had I mean, I don't know if the record is at all specific on what this terminal operator job is and how transferable it is, but it seemed like it wasn't very transferable. Well, I'd submit that there's no evidence Just because it has the same title doesn't make it transferable. Well, I would submit that there has been no evidence, President, on the other side regarding the skills not being transferable. In fact, the testimony from Mr. Gates Well, there is evidence that they weren't transferable. It said that he was going to need a great deal of training because they do things differently in San Diego, in the place he was, apparently. But yet, and still, he brings certain skills having done the job. What skills? Does the record say what skills? Does the record show that he does, in fact, bring certain skills? Yes, in fact If I may Well, this is all under the rubric of the rehabilitation claim, right? So, if Excuse me We had an earlier case Sorry about that The retaliation claim If we find there's a material issue of fact related to Yates and Shahan and it would go back anyway and all this would be covered at that same time, right? Yes One of the same Well, wait a minute. I thought your argument is no because I'm sorry He says no, but I'm just saying that if we decided to send this part of it back that this, what we're talking about now, about whether there was the fact that additional training was necessary for Victor Claudio would indeed go to the jury because the other part of the case would go to the jury as well I'm sorry. With respect to the discrimination claim? No, the retaliation claim But I understand your position to be no because even if Yates did know about this, he still had to do It was still a non-discriminatory reason for what he decided, so it did not in fact retaliate So that's why you still have to get to this other question Yes, you still have to get to this other question About what he knew About what he knew And the record before us is that he did not know about a claim for discrimination That was the testimony Let me ask you this, a terminal operator, is this one of these big cranes down at the refineries that move stuff around? What is it? Well, basically what it is, it is a, Shell has a pipeline system in Southern California and a terminal operator is not actually involved in using cranes and whatnot There's actually monitoring the systems There's somebody in a little wheelhouse that's monitoring pumps and gauges and stuff like that, right? That type of thing It's a control room, right? Well, it's a, there's a control room part of it, but there's also actually the need to actually walk the grounds and inspect various locations and whatnot But from the control room, I think we have it, that he monitors gauges to see pressure and the flow of the pipes and so on and then periodically he goes out and looks to see whether or not we have a leak somewhere or some sort of problem That's generally my understanding So how does that job differ from the job Calderon had before as a terminal inspector? I mean, wasn't he doing something similar in terms of going around and keeping an eye on the integrity of the terminal? He did some of those duties, but there were certain other duties which he did not do which a terminal operator would be performing as well And even going back to this whole issue of creation of that position That position did not exist any place else in the world because it was a job function of engineers and third party contractors that would do that So it was a stopgap Is that a position where they periodically send, when I used to represent terminal operators, the pig through the pipeline to test the integrity of the pressurization of the pipes? Is that the kind of inspecting that he was doing? He was done by a third party contractor That's my understanding as well, that that would have been done by the third party contractor, perhaps engineering staff And again, the reason the inspector job that he had was created in 2006 was because they had a specific need for it at that time In 2009 it was eliminated because it was no longer necessary Going back to Judge Berzon's question, I guess I have the same concern And that is, it's true that he didn't work in the control room as the terminal operator But why wouldn't his background and familiarity with pipeline terminal operations be a benefit similar to Mr. Claudio's experience And while it's true that Claudio might have had better experience as an actual terminal operator It's not like Calderon's walking in off the street knowing nothing about the operation of a pipeline terminal That's true, he did have certain experience But in the judgment of the interviewers involved here given that Mr. Claudio had actual job experience as a terminal operator Mr. Claudio's experience was superior to Mr. Calderon And I submit that is a valid business reason If true If it's true If true The question is could a reasonable jury conclude otherwise on the state of this record I guess the problem I'm having with this is that And looking at this from a standpoint Let's say we're talking about an airline pilot or something Would you wrap up please I won't quickly And you have a pilot that has flown DC-9 or whatever Pilot gets into another jet, another type of jet And there are certain controls and whatever he's learned in the DC-9 that are transferable over to the 747 or whatever it might be And it appears that Calderon had some transferable skills And this guy had some transferable skills And you can't tell from the record which one had more transferable skills Really? And then there's this other factor that was emphasized Which is some inconsistency about local preference or lack of local preference If I may address that briefly with respect to the local preference Very briefly With respect to the local preference issue We're talking about two different jobs Yeah, that's true, but so what? There's either a policy or there isn't a policy I mean you start pulling out policies Either there's a local preference or there isn't a local preference With respect to the job in question The local preference issue came up It was a job in San Diego Right And that particular job was the trader in development job So San Diego can have a local preference But LA doesn't have a local preference It could have different preferences Yes, according to the job, what the job might be In this particular There was no company policy concerning local preferences There was a local preference with respect to that particular job With respect to the job terminal operator in Van Nuys Mr. Yates testified that there was no local preference concerning that issue Okay, your time is up Okay Thank you very much I'll give you two minutes to talk As Mr. Jones went over I've not done second work Just three quick points With regard to the local preference Yates testified that he's never ever heard of a local preference For any position in all of his years at Shell Never ever heard of one And it wasn't advertised as such Never heard of one It's not in the broadcast overview The broadcast overviews don't say anything about there being local preferences This was a manufactured We believe a manufactured requirement To keep Mr. Calder out of the position In this one situation And just two other points on the retaliation issue Record ER 229 to 233 Yates denied having any knowledge the plaintiff had made a complaint of discrimination Or that Shahan had been named in an investigation by the plaintiff He denied it all So there's a complete factual What were you reading from? I was reading from my notes But that is from the record He was asked both questions At his deposition he was asked Did you know that a complaint had been filed of discrimination By Mr. Calderon? And he said no Did you know that Karen Shahan was named in an investigation Of a complaint Or an investigation by Mr. Calderon? He said I didn't know that either He didn't know anything There's a total factual dispute there That needs to be resolved by a jury Finally This whole idea about First of all the San Diego people Just to be clear They worked in Shell terminals Mr. Wynn Mr. Serpa And so when they If they were going to transfer to California They knew it Those guys could step into the job immediately Mr. Claudio worked for this company Criterion in Azusa Different entity Different terminal And contrary to the declarations That they relied on for summary judgment Alan Rodriguez testified That Claudio did not know all the quality controls He did not know the testing And he said that he would have to be trained On the job of terminal operator Like a new hire Same as Mr. Calderon Okay, thank you both very much Thank you Useful argument The case of Calderon vs. Shell High-flying company is submitted And we are in recess Thank you very much
judges: Berzon, Tallman, Smith